## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**LAJESSICA ROSE MAYO**                                    **PLAINTIFF**

**V.**                        **No. 4:25-CV-00346-JTK**

**SOCIAL SECURITY ADMINISTRATION,**
**Commissioner**                                          **DEFENDANT**

### ORDER[1]

Plaintiff, LaJessica Rose Mayo, appeals the Social Security Administration Commissioner's final decision denying her application for disability benefits. For the reasons set out below, the Commissioner's decision is REVERSED and REMANDED.

## I.    Background

On August 25, 2015, Mayo filed an application for supplemental security income benefits due to fibromyalgia, "mini strokes," insomnia, anxiety attacks, asthma, enlarged heart, knee problems, bulging discs, bipolar disorder, depression, post-traumatic stress disorder (PTSD), and carpal tunnel syndrome. (Tr. at 1052, 2000-2017).

---

[1]The parties consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 4.*

Mayo's claim was denied after a hearing before an Administrative Law Judge ("ALJ"), and the Appeals Council upheld the ALJ's decision. *Id*. Taking up Mayo's appeal, this Court reversed and remanded the ALJ's decision, and the Appeals Council remanded for further administrative review. (Tr. at 1234-1242). Another hearing was held before an ALJ, and the ALJ again denied Mayo's application. (Tr. at 1052, 1248-1289). The Appeals Council again remanded the case for further administrative review, instructing the ALJ to give further consideration to the opinion evidence. (Tr. at 1052, 1298-1300).

In January 2023, another hearing before an ALJ was held. The ALJ denied Mayo's claim for benefits again. (Tr. at 1052-1074). The Appeals Council found no basis for changing the ALJ's opinion. (Tr. at 1043-1046).  The Appeals Council's denial makes the ALJ's decision the Commissioner's final decision, and Mayo has requested judicial review.

## II.    The ALJ's Decision[2]

The ALJ found that Mayo had not engaged in substantial gainful activity since the application date of August 25, 2015. (Tr. at 1055).  He found that Mayo has the

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

following severe impairments: asthma, history of carpal tunnel syndrome and elbow cubital surgery, mood disorder, spondylosis, fibromyalgia, chondromalacia, degenerative disc disease (DDD), posttraumatic stress disorder (PTSD), obesity, degenerative joint disease (DJD) of the knees, history of knee replacement, and planta fascial fibromatosis. *Id.* However, the ALJ concluded Mayo did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

According to the ALJ, Mayo had the residual functional capacity (RFC) to perform sedentary work, with the following limitations: (1) only occasionally stooping, crouching, bending, kneeling, and crawling; (2) only limited use of stairs and would require the option to use a cane for ambulation in one of the upper extremities; (3) no more than occasional exposure to dust, smoke, fumes, and other pulmonary irritants; (4) limited to work that is simple, routine, and repetitive, with the ability to make simple, work-related decision; (5) able to maintain frequent interaction with coworkers and supervisors and occasional interaction with the public; (6) restricted from work at unprotected heights; and (7) only frequent fingering and handling with the upper extremities. (Tr. at 1058).

Mayo has no past relevant work. (Tr. at 1073-1074). Relying upon testimony from a Vocational Expert (VE), the ALJ determined that there were a significant

number of jobs available in the national economy that Mayo could perform. *Id.* Accordingly, the ALJ determined that Mayo was not disabled.

## III.    Discussion

### A.    Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence in the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence: in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B.    Mayo's Arguments for Reversal

Mayo contends that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the medical

opinions, and he did not consider at all an opinion that spoke directly to Mayo's ability to work. The Court finds support for this argument.[3]

## C.    Analysis

Mayo suffered from years of anxiety, depression, PTSD, and bipolar disorder. In spite of regular therapy and multiple medication adjustments, Mayo was hospitalized for four days in inpatient psychiatric care in August 2015. (Tr. at 417-463, 1066). Upon admission, she had homicidal thoughts, hallucinations, and suicidal ideation. *Id*.

Mayo treated with multiple therapists and psychiatrists for years, and at clinic sessions the providers routinely noted crying spells, mood irritability, hallucinations, cognitive distortion, rocking back and forth, social and homicidal ideations, insomnia, nightmares, flight of ideas, anger, inattentiveness, rapid speech, and social isolation. (Tr. at 1603-1748). Repeatedly, Mayo said she could not leave the house. The ALJ noted that she could perform some daily activities, but Mayo said she needed help with just about everything. (Tr. at 264-268, 1069).  Her mother agreed that Mayo was very limited in what she could do. (Tr. at 254-256).

Multiple mental health providers submitted opinion evidence, noting that

---

[3] The reversal is based upon Mayo's mental impairments and the Court will limit its discussion thereto. *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

Mayo would have marked or extreme problems in a work setting due to her severe mental illness. (Tr. at 83-84, 1960-1962). One psychiatrist said that Mayo would be impaired by "uncontrolled psychosis." (Tr. at 1960-1962). The ALJ gave little weight to these opinions (Tr. a 1071-1072), citing to the relatively few times that Mayo presented as coherent or cooperative at clinic visits. More troubling, the ALJ completely ignored an important medical opinion.

On August 17, 2018, Mayo's treating psychiatrist and therapist, together, wrote a letter listing specific functional problems Mayo would have in a work setting. (Tr. at 1228).  They wrote that she missed appointments due to not being able to leave her room and that she displayed anger and mood swings. *Id.* They wrote that Mayo would have great difficulty gaining and maintaining employment, and if she could get a job, she would have poor job attendance. *Id*. The letter stated that Mayo would have great difficulty interacting with coworkers or the public. *Id*. She would act erratically and be disturbing and inappropriate at work. *Id*. They concluded that she could not work due to mental illness. *Id*.

The ALJ did not even mention this opinion letter. He limited Mayo's interpersonal work interactions to a degree in the RFC (frequent interaction with coworkers and supervisors and occasional interaction with the public), but this letter stresses how difficult and disruptive those interpersonal interactions would be, and that Mayo could not work because of that. Thes opinions were in line with other

6

treating opinions, which the ALJ discounted. They were also in line with voluminous psychiatric treatment notes. The ALJ's error in omitting discussion of this letter is not harmless and, therefore, reversal is warranted.[4]

## IV.  Conclusion

The ALJ's decision is not supported by substantial evidence because he failed to consider an important medical opinion.

IT IS THEREFORE ORDERED that Commissioner's decision is REVERSED and REMANDED for further administrative review.

Dated 12th December 2025.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] In a similar Eighth Circuit case, where the ALJ did not mention an important treating provider opinion, the Court reversed. *Walker v Comm'r*., 911 F.3d 550, 553 (8th Cir. 2018). The Court held, consistent with prior case law, that an ALJ must give good reasons for discounting medical opinions. *Id*. The low bar established by the Eight Circuit is to, at the very least, mention the opinion. And failure to do so, and to meaningfully discuss the opinion, means that the ALJ has not "shown his work," to quote the Eastern District of Missouri. *Smajic v. Berryhill*, 2019 U.S. Dist. LEXIS 6240 at *11-12 (E.D. Mo. Jan. 14, 2019).